IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| David L. Henry, *et al.* | : | |
| | : | |
| Plaintiffs | : | Case No. C-1-03-509 |
| | : | |
| v. | : | District Judge Susan J. Dlott |
| | : | |
| City of Cincinnati, Ohio | : | ORDER DENYING MOTION TO |
| | : | DISMISS |
| Defendant | : | |
| | : | |

This matter comes before the Court on Defendant City of Cincinnati's Motion to Dismiss and Memorandum in Support (doc. #13). For the reasons that follow, the Motion to Dismiss is **DENIED**.

## I. BACKGROUND

This action was brought pursuant to 42 U.S.C. § 1983 by Plaintiffs Donald Henry, John O'Toole, Glenn Dominy, Edward Ritchy, and Ronald Sexton to challenge the constitutionality of section 910-12 of the Cincinnati Municipal Code ("Section 910-12") on its face and as applied. Section 910-12, as will be discussed in greater detail below, restricts the time, place and manner in which the vocal solicitation of funds is permitted within the City of Cincinnati ("the City") and makes it unlawful to engage in vocal solicitation without a valid registration obtained by the Cincinnati Police Department ("CPD").

As required on a motion to dismiss, the Court takes as true all of the purely factual allegations contained in the Plaintiffs' First Amended Complaint (doc. #8). Plaintiffs Henry, Dominy, and Sexton are homeless residents of the City who dwell on the streets and public places and rely on panhandling in part for their sustenance. Plaintiff Ritchy is a resident of

1

Clermont County, Ohio and serves as the Chief Executive Officer of the Homeless Hotline of Greater Cincinnati, a non-profit institute whose mission is to increase public awareness of and aid to the homeless. Ritchy has panhandled in the City to collect money for the homeless and homeless service organizations and to dramatize the plight of the homeless. Plaintiff O'Toole is a resident of Montgomery County, Ohio, who at times relevant hereto has resided in rented dwellings and on the streets in the City of Cincinnati, and who at times has panhandled to pay for rent, utilities, and sustenance costs. Plaintiffs Dominy, Sexton, Ritchy, and O'Toole allege that they have not registered with the CPD to panhandle and that they fear that they will be arrested for panhandling absent a judicial declaration by this Court.

In their First Amended Complaint, Plaintiffs seek a judicial declaration that Section 910-12 is unconstitutional in violation of the First Amendment and they seek a preliminary and permanent injunction prohibiting the City from enforcing the law. The City now moves to dismiss the Plaintiffs' First Amendment claims[1] on the grounds that Plaintiffs lack standing and that Plaintiffs have failed to state a claim upon which relief can be granted.

## II.   SECTION 910-12 OF THE CINCINNATI MUNICIPAL CODE

Section 910-12 imposes various regulations and restrictions on the practice of "solicitation" in public places or on private property. Cinci. Muni. Code § 910-12(a).[2] "Solicitation" is defined as "to make any request in person . . . for an immediate grant of money,

---

[1] Plaintiffs have dismissed voluntarily the Second, Third, and Fourth Counts of the First Amended Complaint.

[2] The parties did not provide the Court with a copy of Section 910-12. The Court takes judicial notice that the Cincinnati Municipal Code and the ordinances passed by Cincinnati City Council each year are available on the world wide web on the City Council's home page, <www.cincinnati-oh.gov>, and the Court obtained its copy of Section 910-12 from that site.

goods or any other form of gratuity from another person(s)." Id. § 910-12(a)(1). "Solicitation" does not include "passively standing or sitting with a sign that a donation . . . is being sought without any vocal request other than a response to an inquiry by another person." Id. § 910-12(a)(2).

Section 910-12 makes it unlawful to solicit at certain places, certain times, and in certain ways. Under Section 910-12(b), it is unlawful to solicit at the following places:

> (1) In any public transportation vehicle or at any bus stop;
> (2) Within 20 feet in any direction from an automatic teller machine or entrance to a bank;
> (3) From any operator or occupant of a motor vehicle or from any person entering or exiting a motor vehicle;
> (4) Within 20 feet of any crosswalk;
> (5) From a person standing in line waiting to be admitted to a commercial establishment; or
> (6) On private property without the permission of the owner.

Section 910-12(c) makes it unlawful to solicit "after sunset or before sunrise."

Section 910-12(d) prohibits soliciting in an "aggressive manner," which includes the following actions:

> (1) Soliciting in a manner that impedes access to or from, or use of a building, vehicle or establishment;
>
> (2) Soliciting in a manner that would alarm, intimidate, threaten, menace, harass, or coerce a reasonable person;
>
> (3) By following behind, ahead or alongside, blocking the path of, or continuing to solicit a person who walks or drives away from the person soliciting or who gives notice or demonstrates verbally or physically that such solicitation is offensive, unwelcome or that the solicitation should cease;
>
> (4) By using profane or abusive language or gestures either during the solicitation or following a refusal, or making any statement, gesture or other communication that would cause a reasonable person to be fearful or would be perceived as a threat; or
>
> (5) By touching the solicited person without a statement, gesture or other communication that the person being solicited consents to the touching.

3

Similarly, Section 910-12(e)[3] makes it unlawful "to knowingly make a false or misleading representation in the course of soliciting a donation." Such representations "include, but are not limited to" the following:

> (1) Stating that the donation is needed to meet a specific need, when the person soliciting already has sufficient funds to meet that need and does not disclose that fact;
>
> (2) Stating that the donation is needed to meet a need that does not exist;
>
> (3) Stating that the person soliciting is from out of town and stranded, or that he or she is homeless when that is not true;
>
> (4) Stating or representing that the person soliciting is a member of a military service when the person soliciting is neither a present nor a former member of a military service;
>
> (5) Stating or representing that the person soliciting suffers from a mental or physical disability or deformity when the person soliciting does not suffer the disability or deformity indicated.

Finally, Section 910-12(f) makes it unlawful "to solicit without possession of a valid registration issued by the police department." It states that a registration "shall" be issued without a fee to any person who presents himself or herself, "states his or her true name, presents a photo identification or signs a declaration under penalty of perjury that he or she has no such identification, and permits himself or herself to be photographed." Id. Persons who violate the registration requirement are subject to a warning on the first offense and to "a charge of violation of this section" for subsequent violations. Id.

Under Section 910-12(g), only persons who within the prior 18 months have been previously convicted of a violation of Section 910-12, who have had their registration revoked

---

[3] The Henry Plaintiffs (Henry, Dominy, and Sexton) do not challenge the constitutionality of the restrictions on aggressive panhandling contained in subsection (d) or the restrictions on fraudulent panhandling contained in subsection (e). (Doc. #29 p. 10-11.)

under Section 910-12(h), or who have been convicted of aggressive solicitation or solicitation by false or misleading misrepresentations under the laws of another jurisdiction, are ineligible to register. Likewise, under Section 910-12(h), the police may revoke a registration issued to a person who has been convicted of a violation of Section 910-12 within the past 18 months. Section 910-12(i) permits applicants who have been denied a registration or whose registration has been revoked to appeal to the Office of Administrative Hearings of the City of Cincinnati and then to the Hamilton County, Ohio Court of Common Pleas. Lastly, § 910-12(j) contains a severability provision applicable if portions of Section 910-12 are held to be invalid.

### III. STANDARD FOR DISMISSAL UNDER RULE 12(B)(6)

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing the sufficiency of a complaint, courts must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This accords with the purpose of Rule 12(b)(6), which the Sixth Circuit has explained "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). Therefore, "[o]n a Fed.R.Civ.P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion." Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). At the same time, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). Nor is the

5

Court required to accept as true allegations in a complaint that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002); Sprewell v. Golden State Warriors, 266 F.3d 979, 988, amended upon denial of rehearing, 275 F.3d 1187 (9th Cir. 2001); VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP, 348 F. Supp. 2d 255, 263 (S.D.N.Y. 2004). Therefore, the Court relies on the text of Section 910-12 and of the ordinances pursuant to which it was enacted rather than on Plaintiffs' characterization of the municipal law.

## IV. ANALYSIS

### A. Standing

The City moves to dismiss the First Amended Complaint on the grounds that Plaintiffs lack standing to assert their First Amendment claims. If Plaintiffs lack standing under Article III of the Constitution to bring this action, then the Court "has no jurisdiction over the matter and an order of dismissal must be entered." Greater Cincinnati Coalition for the Homeless v. City of Cincinnati, 56 F.3d 710, 715 (6th Cir. 1995) ("Cincinnati Coalition for the Homeless"). Plaintiffs have the burden of establishing their standing and the Court's jurisdiction. See Cob Clearinghouse v. Aetna U.S. Healthcare, Inc., 362 F.3d 877, 881 (6th Cir. 2004). "For purposes of ruling on a motion to dismiss for want of standing, . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975).

In order to meet the "case or controversy" requirement of Article III, Plaintiffs "must allege actual or threatened injury, a causal connection between the injury and the defendant's conduct, and a likelihood that a court decision in the [Plaintiffs'] favor will redress the injury

6

alleged." Ohio Ass'n of Independent Schs. v. Goff, 92 F.3d 419, 421 (6th Cir. 1996). Plaintiffs also must meet the prudential concern that they "be [ ] proper proponent[s], and the action a proper vehicle, to vindicate the rights asserted." Cincinnati Coalition for the Homeless, 56 F.3d at 715 (citation omitted). Regarding the injury-in-fact requirement, the injury alleged may be a past injury or the threat of a future injury that is "real and immediate, not conjectural or hypothetical." Id. at 716 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). However, "[e]specially where First Amendment rights and freedoms are involved, courts do not require that a litigant actually undergo criminal prosecution in order to challenge an allegedly unconstitutional enactment." Id.

The City likens this case to Cincinnati Coalition for the Homeless, where the Sixth Circuit held that the plaintiff, a sometimes homeless gentleman who supplemented his income by "politely asking strangers to give him money," did not have standing to assert a constitutional challenge to an earlier aggressive panhandling ordinance enacted by the City in 1992. The court explained:

> [The plaintiff] admitted that he has not in the past violated the terms of the 1992 enactment and that he has no intention of violating the explicit terms of the ordinance in the future. The plaintiff described for the district court the polite manner in which he solicits money from passersby on the street and his plan to continue the non-threatening begging should he choose to solicit in the future. Therefore, the activities and speech exercised by [the plaintiff] do not fall within the strictures of the ordinance which proscribes only "reckless" interference with persons or vehicles in public places.

Id. The City asserts that Plaintiffs here similarly lack standing because they have not alleged that they intend to engage in the type of vocal, non-passive panhandling that is prohibited by the current version of Section 910-12.

In the First Amended Complaint, Plaintiffs O'Toole, Ritchy, Sexton, and Dominy each

allege that they fear their panhandling activities will result in arrest because they have not registered in advance to panhandle. (Doc. #8, ¶¶ 5-8.) Persons who solicit funds without first registering with the City face a warning for a first offense and may be charged with a second degree misdemeanor for a second offense under Section 910-12. See Cinci. Muni. Ord. 910-12(f), (k). Their allegations are sufficient to provide them standing to challenge the registration provisions of Section 910-12(f). Plaintiff Henry's failure to specifically allege that he has not registered and fears arrest is not fatal at this stage. All Plaintiffs allege that the registration scheme does not provide the necessary procedural safeguards required for due process. (Id. ¶ 40.) Courts analogize licensing statutes that lack procedural safeguards with those that provide overbroad licensing discretion. See Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville and Davidson Cty., Tenn., 274 F.3d 377, 399 (6th Cir. 2001) ("Arguing that a statute lacks sufficient procedural safeguards is one way to allege overly broad licensing discretion."). The alleged overbreadth provides all Plaintiffs with standing to challenge Section 910-12's registration requirements even if they do not allege that they were denied a panhandling registration. See id. (citing Freedman v. Maryland, 380 U.S. 51, 56-57 (1965)); see also DLS, Inc. v. City of Chattanooga, 107 F.3d 403, 414 (6th Cir. 1997).

With regard to the time, place and manner restrictions of Section 910-12, Plaintiffs allege generally that they "peacefully solicit alms from their fellow citizens in the public streets, sidewalks, parks and thoroughfares." (Doc. #8 ¶ 14.) They also allege that place restrictions in Section 910-12 confine their speech "to venues where it is less likely to reach its intended audience" and that the aggressive panhandling restrictions are so vague that "that a reasonable person is left to guess at the meaning of such key terms . . . and could be held subject to

8

punishment for failure to adroitly read the non-verbal cues of those solicited." (Id. ¶¶ 36-37.) Finally, they allege that the municipal law is unconstitutional on its face and as applied because it is not narrowly tailored to serve a compelling government interest and serves as a prior restraint on speech. (Id. ¶¶ 2, 35-39.) "At the motion-to-dismiss stage, we presume that these general factual allegations [regarding the alleged injury] embrace the specific facts needed to prove the claim." Trollinger v. Tyson Foods, Inc., 370 F.3d 602, 615 (6th Cir. 2004). The Court holds that Plaintiffs have pleaded sufficient facts to establish standing at this early pleading stage.[4]

### B.      Failure to State a Claim Upon Which Relief Can Be Granted

Alternatively, the City moves to dismiss on the grounds that Plaintiffs have failed to state a claim upon which relief can be granted. The City's argument is premised on three propositions, the first of which is that Section 910-12 regulates only panhandling. Section 910-12 on its face, however, appears to regulate more than simple begging or panhandling. Section 910-12 regulates "solicitation" which includes "any request . . . for an immediate grant of money, goods or other form of gratuity." Cinci. Muni. Code § 910-12(a)(1). Like an anti-begging law passed by the City of Indianapolis, Indiana, Section 910-12 appears to apply "with equal force to anyone who would solicit a charitable contribution, whether for a recognized charity, a religious group, a political candidate or organization, or for an individual." Gresham v. Peterson, 225 F.3d 899, 903 (7th Cir. 2000).

---

[4] It is possible that the discovery process will establish that individual plaintiffs have standing to challenge one aspect of Section 910-12, but not another. Invalidation of one provision of Section 910-12 would not necessarily invalidate the law as a whole because of the severability clause provided in Section 910-12(j).

The City next asserts that Section 910-12 regulates only commercial speech. Commercial speech has been defined as "expression related solely to the economic interests of the speaker and its audience." Central Hudson Gas & Elect. v Public Serv. Comm'n of New York, 447 U.S. 557, 561 (1980). Commercial speech serves the economic interests of the speaker and "assists consumers and furthers societal interest in the fullest possible dissemination of information." See id. at 561-62. The overbreadth and prior restraint doctrines are generally inapplicable to restrictions on mere commercial speech. See e.g., National Endowment for the Arts v. Finley, 524 U.S. 569, 619 n.12 (1998); Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 496-97 (1982) (same); Central Hudson, 447 U.S. at 571 n.13.

Whether or not solicitation is commercial speech, it is "a recognized form of speech protected by the First Amendment." United States v. Kokinda, 497 U.S. 720, 725 (1990). Additionally, the Supreme Court has held that charitable solicitation is not purely commercial speech. See Village of Schaumburg v. Citizens for a Better Envir., 444 U.S. 620, 632 (1980). The Court reasoned as follows:

> Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease. Canvassers in such contexts are necessarily more than solicitors for money. Furthermore, because charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it has not been dealt with in our cases as a variety of purely commercial speech.

Id. After Schaumburg, lower federal courts and state courts have equated panhandling to charitable solicitations, and analyzed them under the same framework. See e.g. Gresham, 225

10

F.3d at 903-05; Smith v. City of Ft. Lauderdale, Fla., 177 F.3d 954, 956 (11th Cir. 1999); Loper v. New York City Police Dept., 999 F.2d 699, 704 (2d Cir. 1993); Benefit v. City of Cambridge, 679 N.E.2d 184, 187-88 (Mass App. Ct. 1997).

The City's argument that charitable solicitation and panhandling involve only commercial speech is based upon Watchtower Bible and Tract Soc'y of New York, Inc. v. Village of Stratton, 536 U.S. 150 (2002), wherein the Supreme Court struck down as unconstitutional "a municipal ordinance that require[d] one to obtain a permit prior to engaging in door-to-door advocacy of a political cause and to display upon demand the permit." 535 U.S. at 160. In dicta, the Supreme Court implied that both commercial speech and the solicitation of funds are entitled to lesser constitutional protections than core political speech. "Had this provision been construed to apply only to commercial activities and the solicitation of funds, arguably the ordinance would have been tailored to the Village's interest in protecting the privacy of its residents and preventing fraud." Id. at 165. The Supreme Court did not explicitly hold, however, that solicitation is purely commercial speech nor did it overturn its holding in Schaumburg. The Court's use of the phrase, "commercial activities *and* the solicitation of funds," implies that the solicitation of funds is something different from mere commercial activity. Id. (emphasis added).

This Court holds that panhandling, like charitable solicitation, is more than mere commercial speech. As the Second Circuit explained:

> Begging frequently is accompanied by speech indicating the need for food, shelter, clothing, medical care or transportation. Even without particularized speech, however, the presence of an unkempt and disheveled person holding out his or her hand or a cup to receive a donation itself conveys a message of need for support and assistance. We see little difference between those who solicit for organized charities and those who solicit for themselves in regard to the message conveyed.

11

> The former are communicating the needs of others while the latter are communicating their personal needs. Both solicit the charity of others. The distinction is not a significant one for First Amendment purposes.

Loper, 999 F.2d at 704. Because Section 910-12 regulates more than mere commercial speech, and contrary to the City's arguments, the law is subject to facial challenge on the grounds of overbreadth and prior restraint. See Schaumburg, 444 U.S. at 639 (finding charitable solicitation law overbroad).

The final proposition upon which the City's constitutional analysis is based is that Section 910-12 is content-neutral. Content-based speech restrictions are subject to greater constitutional scrutiny than are content-neutral time, place and manner regulations.[5] It might appear on first blush that Section 910-12 is content-based because it restricts only one category of speech, vocal requests for "immediate grant of money, goods or any other form of gratuity." Cinci. Muni. Code § 910-12(1)(a)(1). Proper analysis of the issue under Supreme Court precedents is more complex, however. The Supreme Court has instructed that "[t]he principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it

---

[5] For the government to enforce a content-based restriction on speech in a public forum, "it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). A content-based restriction is not narrowly drawn unless it is the least restrictive means to achieve the government's aims. See Sable Communications of Cal., Inc. v. F.C.C., 492 U.S. 115, 126 (1989). If a regulation is content-neutral, on the other hand, it can impose reasonable time, place and manner restrictions on protected speech in a public forum so long as it is "narrowly tailored to serve a significant government interest" and "leave[s] open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); Perry, 460 U.S. at 45. A content-neutral regulation is narrowly tailored if it does not "burden substantially more speech than is necessary to further the government's legitimate interests." Ward, 491 U.S. at 799.

conveys." Hill v. Colorado, 530 U.S. 703, 719 (2000) (citation omitted). A regulation is content-neutral "if it is justified without reference to the content of regulated speech." Id. at 720. "Regulation of the subject matter of messages, though not as obnoxious as viewpoint-based regulation, is also an objectionable form of content-based regulation." Hill v. Colorado, 530 U.S. 703, 723 (2000).

The statute at issue in Hill made it unlawful for any person within 100 feet of a health care facility's entrance to "knowingly approach" within 8 feet of another person, without that person's consent, in order to pass "a leaflet or handbill to, displa[y] a sign to, or engag[e] in oral protest, education, or counseling with [that] person." 530 U.S. at 707. The Supreme Court majority held that the statute was not content-based for three reasons:

> First, it is not a "regulation of speech." Rather, it is a regulation of the places where some speech may occur. Second, it was not adopted "because of disagreement with the message it conveys." This conclusion is supported not just by the Colorado courts' interpretation of legislative history, but more importantly by the State Supreme Court's unequivocal holding that the statute's "restrictions apply equally to all demonstrators, regardless of viewpoint, and the statutory language makes no reference to the content of the speech." Third, the State's interests in protecting access and privacy, and providing the police with clear guidelines, are unrelated to the content of the demonstrators' speech. As we have repeatedly explained, government regulation of expressive activity is "content neutral" if it is justified without reference to the content of regulated speech.

Id. at 719-20. The Supreme Court did not find it dispositive that the speaker's message had to be examined to determine if the speech was prohibited. See id. at 720-22. "We have never suggested that the kind of cursory examination that might be required to exclude casual conversation from the coverage of a regulation of picketing would be problematic." Id. at 722.

In an earlier case, the Supreme Court upheld as content-neutral and valid a regulation prohibiting solicitation at U.S. post offices, including the sidewalk near the entrance to the post

13

office. See Kokinda, 497 U.S. at 723-24, 728, 736. The Supreme Court stated that solicitation is "unquestionably a particular form of speech that is disruptive of business." Id. at 733. "It is the inherent nature of solicitation itself, a content-neutral ground, that the Service justifiably relies upon when it concludes that solicitation is disruptive of business." Id. at 736. The Supreme Court further noted that the ban did not discriminate on the basis of content or viewpoint because it did not intend to advance one viewpoint, but discourage another, nor was it granting one side of a debatable public question of a monopoly to express its views. See id. at 736-37.

Lower court decisions have reached mixed results. A magistrate judge in this judicial district, analyzing a prior version of Section 910-12 that restricted only the time and place for solicitations, held that the solicitation ordinance was content-based. See Clark v. City of Cincinnati, case no. C-1-95-448, slip op. at 10-11 (S.D. Ohio May 22, 1998). The magistrate judge reasoned that the ordinance restricted only speech related to soliciting, not speech related to other topics. See id. at 10. Likewise, in Loper, the Second Circuit Court of Appeals held that a statute which prohibited loitering for the purposes of begging was content-based because "it prohibits all speech related to begging." 999 F.2d at 705. The Loper and Clark decisions pre-date Hill and neither discusses Kokinda wherein the Supreme Court held that a ban on solicitation was content-neutral. On the other hand, the Ninth and Eleventh Circuit Courts of Appeal have relied on Kokinda to hold that the statutes regulating or banning solicitation were content-neutral. See Los Angeles Alliance for Survival v. City of Los Angeles, 157 F.3d 1162, 1164 (9th Cir. 1998); ISKCON Miami, Inc. v. Metropolitan Dade Cty., Fla., 147 F.3d 1282, 1288 n.5 (11th Cir.

1998).[6] The ISKCON Miami court stated that the solicitation statute was "aimed at the abusive practices associated with solicitation, [and] does not discriminate upon content or viewpoint." 147 F.3d at 1288 n.5.

This Court holds that Section 910-12 similarly is content-neutral applying the Hill analysis. Section 910-12 does not impose an absolute ban on solicitation, but rather restricts the time, place and manner of vocal solicitation. Second, taken on its face, the law is not concerned with the message implicitly or expressly communicated by a solicitor's request for money. It restricts all vocal solicitation requests at certain times and places regardless of whether the message being communicated is intended, for instance, to support a charitable organization, to raise consciousness about the plight of homeless veterans, or to convey one person's tale of woe. Thus, Section 910-12 does not restrict speech "because of a disagreement with the message it conveys." Hill, 530 U.S. at 791.

Third, Section 910-12 is not justified by reference to the content of the speech, but rather by the act of solicitation itself. Plaintiffs allege in the First Amended Complaint that the City enacted Section 910-12 because it "viewed the solicitation of alms by the destitute and homeless as an undesirable aspect of urban life" and it wanted "to conceal the realities of poverty and homelessness from the people of the City." (Doc. #8 ¶¶ 16, 33.) The City contends that Section 910-12 was enacted for different reasons, such as to provide safe and inviting areas for commerce, to prevent aggressive and improper solicitation, and to connect those in need with information about available social service providers. See Cinci. Ord. Nos. 068-2002 & 158-2003.

---

[6] Also, the district court in Gresham had held that the Indianapolis solicitation statute was content-neutral, but the parties then stipulated that issue for purposes of the appeal. See 225 F.3d at 902, 906.

This dispute of fact is not material, however, because even taking Plaintiffs' allegations as true, Section 910-12 is justified without reference to the content of the regulated speech, and is therefore content-neutral. See Hill, 530 U.S. at 720; Kokinda, 497 U.S. at 736-37. Therefore, Section 910-12 should be upheld as a content-neutral regulation if its restrictions are "narrowly tailored to serve a significant government interest" and "leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983).

Turning now to an analysis of Section 910-12 under the proper constitutional standard of review, the Court cannot state that there is no set of facts under which Plaintiffs can prevail. See Conley, 355 U.S. at 45-46 (stating the Rule 12(b)(6) standard for dismissal). To begin, without affording the parties an opportunity to present evidence, the Court cannot properly determine if the time, place, and manner restrictions of Section 910-12 (1) are narrowly tailored to serve significant government interests,[7] (2) do not burden substantially more speech than is necessary to further the government's significant interests, and (3) leave open ample alternative channels of communication. See Ward, 491 U.S. at 791; Perry, 460 U.S. at 45.

---

[7] The City is asking the Court to make a factual finding as to what the government's purposes were and that the purposes serve a significant interest. The Cincinnati City Council did make express statements regarding its purpose in adopting the current version of Section 910-12 in Ordinances 068-2002 and 158-2003, both of which are properly before the Court. However, the Court cannot consider for any purpose at this stage the City's unsupported assertion that "[t]hese findings were made following public hearings, testimony from police officers, and a study of other municipalities that have enacted similar provisions." (Doc. #27, p. 8 n.12.) Moreover, Plaintiffs contend that the City's stated purposes are not its sole or true purposes. For example, Plaintiffs allege that Section 910-12 is intended to advance "the satisfaction of business leaders and . . . to conceal the realities of poverty and homelessness from the people of the City." (Doc. #8 ¶ 34.) The prevention of crime is a significant government interest, but a desire to conceal the realities of poverty is not. In any event, these issues are better left to determination after discovery.

16

Regarding the specific issue of the registration requirement, Section 910-12 is subject to a prior restraint challenge. Prior restraints face a "heavy presumption" of invalidity. See Forsyth Cty, Ga. v. Nationalist Movement, 505 U.S. 123, 130 (1992) (analyzing the constitutionality of a municipality's parade permit scheme). Municipalities generally can regulate the use of public forums by a permit or licensing scheme where the scheme does not confer overly broad discretion upon a public official, is content-neutral, narrowly tailored to serve a significant government interest and leaves open ample alternative channels for communication. See id. As for the need for prompt judicial review, the Supreme Court recently stated that a state's ordinary judicial review procedures suffice if "the courts remain sensitive to the need to prevent First Amendment harms" and where the licensing scheme does not censor expression, but only applies reasonably objective, nondiscretionary criteria unrelated to the content of expression. City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774, 124 S.Ct. 2219, 2224 (2004). The Court will not dismiss Plaintiffs' claims here because they may be able to prove, for example, that the registration requirement is not narrowly tailored to a significant government interest or that it does not in practice provide for prompt review of registration denials.

The City primarily relies on two cases to argue that its registration requirement for solicitors is justified on the grounds of preventing fraud. First, in Northeast Ohio Coalition for the Homeless v. City of Cleveland, 105 F.3d 1107 (6th Cir. 1997) ("Northeast Ohio Coalition"), the Sixth Circuit Court of Appeals upheld the constitutionality of a municipal ordinance requiring peddlers to pay a $50 license fee and to wear the license on their person while they are peddling. See id. at 1108, 1110-11. Second, in Watchtower Bible, the Supreme Court struck down an ordinance requiring individuals to obtain a license before engaging in door-to-door advocacy at

17

private residences, but stated in dicta that the interest of supporting fraud might have adequately supported the ordinance "insofar as it applie[d] to commercial transactions and the solicitation of funds." 536 U.S. at 168.

This Court is not convinced that these cases compel dismissal of the First Amended Complaint as to the registration requirement at this stage. It has not been established here that the registration requirement was enacted to prevent fraud. Nor are the cases on all fours with the facts here. The Cleveland ordinance in Northeast Ohio Coalition targeted commercial activity and incidently affected charitable solicitors only to the extent they were offering commercial goods as a means to raise funds. See 105 F.3d at 1108. Watchtower Bible prohibited door-to-door advocacy at private residences, but not in traditionally public fora as does Section 910-12. See 536 U.S. at 154. The Supreme Court in earlier decisions has recognized the special concerns of a "householder's right to be let alone" by stating that door-to-door canvassing is less entitled to extensive protections than other forums for free speech because "home is one place where a man ought to be able to shut himself up in his own ideas if he desires." Hynes v. Mayor and Council of Oradell, 425 U.S. 610, 619 (1976) (quoting, in part, Zechariah Chaffee, Free Speech in the United States (1954)).[8] Moreover, after the Watchtower Bible decision, a judge in the Northern District of Ohio struck down a licensing requirement for charitable organizations who solicit funds as part of their door-to-door advocacy because the communicative aspects of the speech could not be separated from the more commercial aspects. See Ohio Citizen Action v. City of Mentor-on-the-Lake, 272 F. Supp. 2d 671, 680 (N.D. Ohio 2003).

---

[8] The Court does not mean to imply that Northeast Ohio Coalition and Watchtower Bible will not be persuasive authority when this case is decided on the merits, but holds only that they do not compel dismissal of the case at the pleadings stage.

Finally, turning to another of the City's specific arguments, the City relies on the <u>Gresham</u> decision from the Seventh Circuit, which upheld an Indianapolis aggressive panhandling ordinance, to suggest that the claim by the Ritchy Plaintiffs (Ritchy and O'Toole) fails as a matter of law in respect to the aggressive panhandling restriction.  <u>Gresham</u> was decided on summary judgment after the parties had entered into a stipulation of facts.  <u>See</u> 225 F.3d at 901.  Moreover, <u>Gresham</u> is not binding upon this Court, the Indianapolis ordinance restrictions are not co-extensive with the Section 910-12 restrictions, and <u>Gresham</u> does not address the specific vagueness concerns raised by Plaintiffs here.  Thus, <u>Gresham</u> does not compel a holding that the Ritchy Plaintiffs can prove no facts that will entitle them to relief on this issue.

## V. CONCLUSION

For the reasons stated above, the City of Cincinnati's Motion to Dismiss (doc. #13) is **DENIED**.

IT IS SO ORDERED.

                                                                              s/Susan J. Dlott
                                                                              Susan J. Dlott
                                                                              United States District Judge